IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY and NONA HEUSER,

    Plaintiffs,

vs.                                            No.    CIV 95-257 MV/LCS

GARY JOHNSON, et al.

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Enforce Settlement [#341-1]. Having fully considered the parties' arguments, the record, and the applicable law, the Court finds that the motion is well-taken and should be **GRANTED**.

**Undisputed facts.** The parties, represented by counsel, entered into mediation in March and again on April 15, 1998 with the goal of reaching settlement in this case. Luis Stelzner was the mediator. After ten hours of mediation, the parties were able to agree on the essential terms of settlement and Mr. Stelzner memorialized their agreement in a written outline format. Since the City Defendants are self-insured, the City Council had to give final formal approval of the settlement amounts. Affidavit of Robin D. Strother. Accordingly, the parties agreed that "Counsel for the County and City Defendants . . . will recommend to their respective clients that said clients jointly pay the total sum of $237,500 in full and complete settlement of all claims in the . . . action filed or that could have been filed including attorneys fees and costs." Def. Mem., Ex. A. They further agreed that "if said sum of $237,500 is jointly offered . . . [Plaintiffs] will

accept said offer, if it also includes the terms set out below." Id.  These terms, contained in paragraph three, were that Plaintiffs' electrical service would be "promptly restore[d]" "without need of an inspection, subject to [Plaintiffs] signing a Hold Harmless Agreement," and that Plaintiffs would be "reinstated as regular customers." Id.  Robin Strother and Robert Armijo (counsel for Defendants), Richard Rosenstock (counsel for Plaintiffs), and both Plaintiffs signed the agreement.  To avoid further "unnecessary [judicial] work," Mr. Stelzner then notified the Court that the parties had reached an agreement that was awaiting final approval, which "will be approved by the clients probably within the next week or so." Court file, April 16, 1998 Letter from Luis Stelzner to Judge Leslie Smith.  A City Council meeting was scheduled for April 21st.

Two days after the mediation, on April 17, Plaintiffs faxed Rosenstock a letter "asking him to advise Defendants we did not accept the terms of the Outline and would not accept the proposed offer counsel was going to recommend." Affidavit of Anthony Heuser; Affidavit of Nona Heuser.  The reason they decided to back out of the agreement was that they "felt the Defendants had unfairly used the [electrical] re-connection as a 'club' over us" and they had "rather accept more delay . . . than submit to the pressure [they] felt was placed on [them]." Id.  Plaintiffs thought that they could revoke their acceptance of the terms of the agreement any time prior to the time the City acted on the proposal. Id.  Because he was out of town, Rosenstock did not notify Defendants of Plaintiffs' intent to revoke their acceptance of the agreement.  Affidavit of Rosenstock.  Strother sent a Hold Harmless Agreement to Rosenstock on April 20. Id.  Rosenstock made changes in the document, to which Strother agreed, and the document was faxed to Plaintiffs for approval on April 21. Id.  The agreement set restoration of electricity for April 25th without the need for an inspection and reinstated Plaintiffs as regular customers, Pl.

Resp., Ex. B., which were the two express conditions required under the settlement agreement.

At the same time, Strother also faxed a letter from the Farmington Electric Utility System stating that, in order to "minimize intrusion on the customer's property," the utility would provide a meter on a pole in front of the property when the electricity was restored. Pl. Resp., Ex. C. The meter had originally been located on the side of Plaintiffs' house and Plaintiffs would have been responsible for providing the wiring and connections at a cost they believed to be approximately $100; Plaintiffs had already rejected the proposed change in location during the mediation. Affidavit of Anthony Heuser. Plaintiffs refused to approve the Hold Harmless Agreement because they believed it was too broad. Affidavit of Anthony Heuser, Affidavit of Nona Heuser. They were also angered by the letter regarding meter placement. They again instructed Rosenstock to "withdraw their willingness to accept the terms" of the settlement agreement. Affidavit of Rosenstock. Rosenstock notified Strother at around 10:00 a.m. on the 21st that Plaintiffs "cannot accept the tentative settlement agreement and the case must proceed." Pl. Resp., Ex. D.

Strother indicated his intent to continue to comply with the terms of the agreement. A City Council meeting was held at 11:00 a.m., and the Council formally approved the settlement amounts. Affidavit of Strother. Strother then notified Rosenstock of the Council action and asked Plaintiffs to comply with the terms of the settlement agreement. Id., Ex. C. Plaintiffs refused, and this motion to enforce settlement was filed.

After the Court was notified that settlement had fallen through, an order was issued *sua sponte* setting a hearing for May 1, 1998 in which the Court would determine whether Plaintiffs'

residential electricity could be immediately safely reconnected. The parties reached an agreement on the issue, an FUS inspector inspected the house to insure safety, and electricity to the residence was restored, with the meter located in its original position. Affidavit of Strother filed June 29, 1998.

**Legal standards.** "A settlement document is a contract and is construed using ordinary principles of contract interpretation. Where a contract is unambiguous, its terms are given plain meaning, and the intent of the parties is determined from the document alone." Anthony v. United States, 987 F.2d 670, 673 (10th Cir. 1993) (citations omitted). "Construction of a settlement agreement generally is governed by state law." Brockman v. Sweetwater County School Dist. No. 1, 25 F.3d 1055, 1994 WL 170795, **2 (10th Cir.), cert. denied, 513 U.S. 951 (1994). New Mexico law favors the settlement of disputed claims, see Gonzales v. Atnip, 102 N.M. 194, 195, 692 P.2d 1343, 1344 (Ct. App. 1984), cert. denied, 102 N.M. 225, 193 P.2d 591 (1985), and contracts of settlement will be enforced here in accordance with their terms if there is no ambiguity in the terms of the settlement agreement. See Montoya v. Villa Linda Mall, Ltd., 110 N.M. 128, 129, 793 P.2d 258, 259 (1990). In New Mexico, a settlement agreement or release can be challenged if there is a lack of consideration, fraud, misrepresentation, duress, mistake, undue influence, overreaching, or other factors supporting unenforceability. See Hendren v. Allstate Ins. Co., 100 N.M. 506, 508, 672 P.2d 1137, 1139 (Ct. App. 1993).

> The existence of a contract does not hinge on a condition that qualifies a party's duty to perform. Generally, a condition precedent is an event occurring subsequently to the formation of a valid contract, an event that must occur before there is a right to an immediate performance, before there is breach of a contractual duty, and before the usual judicial remedies are available. Whether conditions precedent are considered prerequisites to formation of a contract or prerequisites to an obligation to perform under an existing agreement is controlled

by the intent of the parties.

Western Commerce Bank v. Gillespie, 108 N.M. 535, 537, 775 P.2d 737, 739 (1989) (citations omitted). Defendants, as movants, first have the burden to show by a preponderance of the evidence the making of the contract and timely satisfaction of the condition precedent. See id. at 538, 775 P.2d at 740. If Defendants satisfy their burden, then New Mexico law "impose[s] upon the party seeking to set aside the settlement a heavy burden of persuasion" that the agreement was unlawfully induced by duress or other factors supporting unenforceability. See id.; Marrujo v. Chavez, 77 N.M. 595, 597, 426 P.2d 199, 201 (1967) ("A party seeking relief from a stipulation of settlement has a heavy burden of persuasion.").

**Discussion.** Initially, on review of the settlement agreement, the Court finds that its language unambiguously reflects the intent of the parties; i.e., that its terms are not susceptible to different constructions, see Levenson v. Mobley, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987), thus this is not a situation in which extrinsic evidence is required to determine its meaning and no hearing will be held. The agreement conclusively and unambiguously states that a monetary amount had been arrived at that both parties agreed would represent "full and complete settlement of all claims" as long as electricity was promptly restored without need of an inspection, a hold-harmless agreement was signed, and Plaintiffs were restored as regular customers. The agreement further provided for all other material terms that are normally found in settlement agreements, such as payment for mediation fees, the signing of a complete release, waiver of rights provided by previous court orders, costs and attorney fees, and dismissal with prejudice. Plaintiffs' contention that the agreement was nothing more than "an outline of a possible agreement with several material conditions to be negotiated in the future . . . an agreement to agree . . . [or]

preliminary negotiations," Pl. Resp. at 7, 8, is without merit. "[O]ne party's subjective impressions, innermost thoughts, or private intentions do not create an ambiguity." Hoggard v. City of Carlsbad, 121 N.M. 166, 170, 909 P.2d 726, 730 (Ct. App. 1995), cert. denied, 121 N.M. 119, 908 P.2d 1387 (1996).

The fact that the parties were to negotiate the language of the hold-harmless agreement and the meter placement at a later date does not preclude a finding that a binding contract of settlement existed. See Bogle v. Potter, 72 N.M. 99, 105, 380 P.2d 839, 843 (1963) (holding that a party can be bound by a settlement even if certain details are not yet worked out). Because Plaintiffs had agreed to sign a hold-harmless agreement and were bound to act in good faith in doing so, and because the meter placement was not an essential term that would cause a change in the terms or purposes to be accomplished by the settlement, see id., the Court finds that the "Outline of Agreement" is a binding contract of settlement. The case cited by Plaintiffs, Fratello v. Socorro Electrical Coop., 107 N.M. 378, 758 P.2d 792 (1988), is distinguishable because there, the additional term did put the entire settlement contract in jeopardy. See id. at 381, 758 P.2d at 794.

Plaintiffs also argue that because the City Council had to give formal approval of the settlement amount, they had a right to repudiate the contract at any time before the approval had been made. Again, this argument is without merit. From the express terms of the agreement, the Court finds that the parties' intent was to form a binding contract in which the condition precedent of formal Council approval was a condition of enforcement, but not of formation. Cf. Western Commerce Bank, supra. The City had a reasonable time in which to perform the condition precedent, see 108 N.M. at 538, 775 P.2d at 740, and the Court finds that it formally

approved the settlement within a reasonable time period, satisfying the condition precedent. Defendants have sustained their burden of establishing that a binding, enforceable settlement agreement exists between the parties.

Plaintiffs' defense of duress is without merit. There are generally two types of duress. The "real" defense of duress is quite narrow. A contract is rendered void when a party to a contract is physically compelled by duress to manifest his or her consent to the contract. Restatement (Second) of Contracts § 174 (1981). The second type of duress occurs when a party to a transaction uses an improper threat that leaves the victim no reasonable alternative. This type of duress renders the contract voidable. Id. § 175. Although it has not formally adopted this section of the Restatement, New Mexico's common-law definition of duress resembles that of the Restatement. See Barwin v. Reidy, 62 N.M. 183, 197-98, 307 P.2d 175, 185 (1957) (defining duress to be "an actual or threatened violence or restraint of a man's person, contrary to law, to compel him to enter into a contract or discharge one" or "that degree of severity, either threatened or impending or actually inflicted, which is sufficient to overcome the mind of a person of ordinary firmness"); NMRA 1998, Rules 13-839, 13-838. The facts that Plaintiffs appeared at the mediation without having eaten or that they were tired after several hours of mediation will not support a claim of duress. The Court finds that using the bargaining chip of restoration of city-provided electrical service, in light of the fact that Plaintiffs had generator-provided electrical service, was not so unfair as to be considered duress under the circumstances of arms-length bargaining. Indeed, Plaintiffs established that the "duress" of doing without city-provided electricity was not all that severe by deciding two days after the mediation that they had rather do without it than "submit to the pressure I felt was placed on me." Affidavit of Anthony Heuser;

Affidavit of Nona Heuser.

Plaintiffs' major complaint seems to be that they do not think $237,000 is enough money to fairly compensate them for their damages. The problem is that they expressly agreed in writing that they would accept that amount to fully settle their claims if the conditions of restoration of electricity and status as customers were met. After all, the purpose of a settlement mediation is to get both parties to compromise what they believe is fair in order to end the case. See Laserage Technology Corp. v. Laserage Lab., Inc., 972 F.2d 799, 802 (7th Cir.1992) ("A settlement agreement is merely a contract between the parties to the litigation, wherein generally the defendants promise some partial remedy in exchange for the plaintiff's promise to dismiss the case and release the defendants from any future liability for their conduct that formed the basis of the dispute." (emphasis added)). While the Court does not believe that the settlement amount was unfair, even if it was, "[i]t is not the function of courts to remake bad contracts that competent parties voluntarily make for themselves." Armstrong v. Csurilla, 112 N.M. 579, 584, 817 P.2d 1221, 1226 (1991). Neither is it the function of courts to refuse to enforce contracts that are binding in the absence of a good reason for doing so. Plaintiffs have not satisfied their burden of showing that they should be relieved from their duty to perform under the settlement agreement.

The Court finds that the settlement agreement was the product of Plaintiffs' knowing, voluntary, and intelligent decision; that it represented a meeting of the minds of the parties concerned; and that its terms should be enforced.

**NOW, THEREFORE, IT IS ORDERED THAT** Defendants' Motion to Enforce Settlement is **GRANTED**;

**IT IS FURTHER ORDERED THAT** the parties shall comply with all terms of the

Settlement Agreement that have not already been satisfied or mooted by prior acts of the parties.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE